```
              UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF PENNSYLVANIA

JUDITH A. TRACEY,              :   CIVIL NO. 3:05-1499
                               :
          Plaintiff            :
                               :
   v.                          :   (Judge Nealon)
                               :
JO ANNE B. BARNHART,           :   (Magistrate Judge Smyser)
Commissioner of Social         :
Security,                      :
          Defendant            :
                               :
```

## REPORT AND RECOMMENDATION

The plaintiff has brought this action under the authority of 42 U.S.C.§ 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for disability insurance benefits (DIB).

## I.  Procedural Background

The plaintiff applied for DIB on November 25, 2003, alleging disability since January 11, 2001. Tr. 109-11. Her application was denied initially and she filed a request for a hearing. Tr. 72, 81. On April 5, 2005, the plaintiff, her husband and a vocational expert (VE) testified before an administrative law judge (ALJ). Tr. 18-71. On April 28, 2005, the ALJ issued a decision denying the plaintiff's claim. Tr. 11-17. The

plaintiff requested review from the Appeals Council, which denied her request on June 10, 2005.  Tr. 3-5.  Thus, the ALJ's decision became the final decision of the Commissioner.  42 U.S.C. § 405(g).

**II.   Factual Background**

The plaintiff was fifty-six-years old at the time of her alleged disability onset.  Tr. 15, 109.  She has a high school education and an associate degree in data processing.  Tr. 24. The plaintiff alleged disability since January 11, 2001, due to seizures, anxiety, depression and tension.[1]  Tr. 136.

The plaintiff was diagnosed with a seizure disorder around 1994, although she reported having seizures since she was five years old.  Tr. 168, 164.  The plaintiff, who was taking Dilantin, remained seizure-free from 1994 until July 1998, when she reported petit-mal seizures.  *Id.*  In August 1998, the plaintiff's medication was changed to Depakote because she reported drowsiness from the Dilantin.  Tr. 163.  The plaintiff reported sleepiness again in November 1998, which her physician

---

[1] Because the plaintiff has challenged only the ALJ's findings regarding her seizure disorder, we confine our discussion on review to the evidence relevant to that disorder.

opined was due to the Depakote, and again changed medications. Tr. 161.

The plaintiff was hospitalized for a grand mal seizure in April 1999. Tr. 157. Harjit S. Bajaj, M.D., stated that the seizure was induced by the plaintiff's new medication, Neurontin. Tr. 159. Dr. Bajaj noted that the plaintiff had tried multiple seizure medications in the past. *Id.* Three weeks after her hospitalization, the plaintiff was taking Neurontin and Dilantin and was "feeling fine" but "always tired." Tr. 156.

The plaintiff retired on May 31, 2000. Tr. 151. She testified that for the last year she worked, she was trying different dosages and types of medication, which made her sleepy, groggy, shaky and nauseous. Tr. 26. On January 23, 2001, the plaintiff reported that her last seizure had occurred on January 11, 2001, while she was asleep. Tr. 28, 43, 192. Craig Jurgensen, M.D., diagnosed partial complex epilepsy. Tr. 193. Dr. Jurgensen noted that the plaintiff had a total of four seizures since 1994. *Id.* He told the plaintiff not to drive and increased her Dilantin dosage. *Id.*

The plaintif again switched medications, from Dilantin to Carbatrol, in February 2001 after having an allergic reaction to the Dilantin.  Tr. 28, 191.  Dr. Jurgensen's medical notes show that from January 2001 until the time of the hearing, the plaintiff repeatedly complained of daily headaches.  Tr. 184-194.  In February 2002, Dr. Jurgensen opined that the plaintiff's overuse of Sinutab was causing rebound headaches.  Tr. 186.  The plaintiff testified that her current seizure medication makes her feel dull and confused and gives her memory problems on some days.  Tr. 28.  The plaintiff had not, however, had a seizure since January 2001.  Tr. 28, 43.

Dr. Jurgensen noted that the plaintiff had a euphoric mood, normal speech and normal motor behavior in July 2001.  Tr. 188.

The plaintiff's activities consist of raising ducks, babysitting for her grandchildren, driving, household chores, and taking care of family finances.  Tr. Tr. 14, 29-31, 184, 186, 193.  She has also twice looked for a job since retiring.  Tr. 185.

**III.  Disability Determination Process**

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled.  The ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents her from doing past relevant work; and (5) whether the claimant's impairment prevents her from doing any other work.  20 C.F.R. § 404.1520.

The ALJ determined that: (1) the plaintiff had not engaged in substantial gainful activity since her alleged disability onset date; (2) the plaintiff's seizure disorder is severe; (3) the disorder did not meet or medically equal any listed impairment(s); (4) the plaintiff is unable to perform past relevant work; and (5) she has the residual functional capacity to perform unskilled medium work requiring no significant interaction with others. Tr. 15-16.  The VE gave examples of such jobs (i.e. kitchen helper, dining room attendant and store laborer), and testified that they exist in significant numbers in the national economy.  Tr. 15.  20 C.F.R. § 404.1560.  Because

5

the plaintiff was able to perform work that existed in significant numbers in the national economy, the ALJ determined that the plaintiff is not disabled.  Tr. 16-17.  20 C.F.R. § 404.1520(g).

**IV. Discussion**

The plaintiff argues that the ALJ: (1) ignored the opinion of her treating physician; (2) erred in finding that her complex partial seizures do not meet or equal Listing 11.03 for seizures; (3) erred in not finding that her complex partial seizures meet or equal Listing 12.02 for organic mental disorders; (4) erred in not concluding that her treatment history and activities of daily living support a finding that she meets or equals Listing 12.02; (5) erred in finding that her seizures are under control, and; (6) erred in finding her not entirely credible regarding the severity of her symptoms.

    A.  Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial

6

evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

   B.  Whether the ALJ ignored the opinion of a treating physician

   The plaintiff contends that the ALJ ignored Dr. Jurgensen's January 2001 and October 2002 diagnoses of complex partial seizures.  Tr. 193, 232.  Doc. No. 8 at 8.  These diagnoses, the plaintiff asserts, reflect Dr. Jurgensen's opinion that the plaintiff "continued to suffer from complex partial seizures well after her last grand mal seizure in January of 2001."  Doc. No. 8 at 3.  The plaintiff argues that these diagnoses therefore constituted a treating physician's medical opinion, which the ALJ rejected without providing the requisite explanation. *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d. Cir. 2001).

   Dr. Jurgsensen did not characterize the plaintiff's seizures as "ongoing" or "continuing."  Tr. 193, 232.  The plaintiff

7

testified that her last seizure was in January of 2001. Tr. 28, 38, 43.

The ALJ did adopt Dr. Jurgensen's diagnoses, finding that the plaintiff's seizure disorder was a severe impairment. Tr. 12. The ALJ did reject the type of treating physician opinion regarding the nature and severity of an impairment with which *Fargnoli* was concerned. 247 F.3d at 39. The plaintiff's argument that a treating physician's opinion was ignored does not have merit.

### C.  Whether the ALJ erred in finding that the plaintiff's seizures did not meet or equal Listing 11.03

The plaintiff argues that the ALJ erred in not finding that her seizure impairment meets or equals the listing for non-convulsive epilepsy. To meet Listing 11.03, a claimant must show that she experiences minor motor seizures "documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena" that occur more than once a week despite at least three months of prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.03. The claimant bears the burden of showing that her impairments are severe and that they

meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The plaintiff failed to show that she meets all the criteria of Listing 11.03. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Listing 11.03 requires documentation of seizures occurring more than once a week despite at least three months of prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The plaintiff's last documented seizure, however, was in January 2001. Tr. 28, 38, 43, 192.

The plaintiff asserts in her brief that her daily headaches, confusion, memory loss, fuzziness and "fade outs" constitute the type of small motor seizures the Listing describes. Listing 11.03 requires objective documentation, by EEG and detailed description of seizure pattern, of small motor seizures. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The plaintiff did not present documentation. The plaintiff described symptoms to her physicians and to the ALJ. Tr. 28-29, 184-94, 217-18, 233. She testified before the ALJ that the confusion and memory loss she experiences are due to her medications, not seizures. Tr. 28.

Listing 11.03 also contains the criterion that the documented seizures have resulted in altered awareness, have caused a loss of consciousness with transient manifestations of unconventional behavior or have significantly interfere with the person's daily activities.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

D.  Whether the ALJ erred in not finding that the plaintiff's seizure disorder meets or equals Listing 12.02

The plaintiff argues that she meets or equals the criteria for Listing 12.02, organic mental disorders.  This argument is a factual argument.  The court's role is not to adjudicate the facts but to determine whether the decision is supported by substantial evidence.  However, the ALJ's duty at Step Three was to consider every relevant Listing.  *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000).  The organic mental disorders listing is relevant and needs to be considered.  The case should be remanded for this purpose.  To meet the required level of severity for Listing 12.02, a claimant's impairment must either satisfy both the requirements of 12.02(A) and 12.02(B) or the requirements of 12.02(C).  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.02.

Section (A) requires the plaintiff to show a "loss of specific cognitive abilities or affective changes" and the "medically documented persistence" of at least one of a number of listed symptoms, including memory impairment, emotional lability (e.g., explosive temper outbursts), disorientation and thought disturbances (e.g., hallucinations, delusions). 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.02(A). The plaintiff contends that she identified disorientation, memory impairment, thought disturbances and emotional ability at the hearing: disorientation in the form of headaches, memory impairment and thought disturbances in the form of "dumb days," and emotional lability in the form of an inability to handle criticism at work. Doc. 8 at 12. Tr. 32, 28-29, 25, 47.

The Listing 12.02(C) criteria requires the claimant to show evidence of (1) repeated, extended episodes of decompensation; (2) a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would have caused the claimant to decompensate, or; (3) inability for one year or more to function outside of a highly supportive living arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.02(C).

11

The plaintiff contends on appeal that she met the Listing 12.02(B) and 12.02(C)(1) criteria.

The ALJ does not explain why the 12.02 Listing criteria were not considered. The ALJ did not consider the claim under the criteria of any listing, but mentioned Listing 11.02 and 11.03. Merely mentioning listings and not considering a claim as against listing's criteria does not provide a reviewable decision. The Commissioner's brief advances factual arguments that if accepted may form a basis for a fact finder to determine that the listing's criteria are not met. However, the court is not the fact finder.

The defendant does not argue that the Third Circuit does not require the ALJ to specify which listed impairments he considered. The decisions of the Third Circuit do require the ALJ to specify the listings that have been considered and to consider all relevant listings. Here, the ALJ did specify two listings that he considered, 11.02 and 11.03. Tr. 13. The ALJ did not specify Listing 12.02.

It is a claimant's burden to prove that her impairment met or equaled the criteria set forth in a particular listing. *Hemphill v. Barnhart,* 2002 WL 32348337, *5 (E.D.P.A. Jan. 31, 2002) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990). It would facilitate the adjudicative process greatly if a claimant were to assume the responsibility to assert to the ALJ at the outset of a hearing that her theory is in part or whole based upon a step three listings criteria contention.

F.  <u>Whether there is substantial evidence to support the ALJ finding that the plaintiff's seizures are under control</u>

The plaintiff argues that the ALJ erred in finding that her seizures are under control. The plaintiff bases her argument in part on Dr. Jurgensen's diagnoses in January 2001 and October 2002 of complex partial seizures. Tr. 193, 232. The plaintiff testified that her last seizure was in January 2001. Tr. 28, 38, 43.  Her remaining confusion and disorientation are due to medication.  The medications are taken to control her seizures, and result in side effects of dullness and confusion.  Tr. 28. It does not make any sense to view her dullness, confusion and

memory loss as not emanating from her seizures, therefore, since here seizures give rise to the medications regimen.

### G.  Whether the ALJ erred in finding that the plaintiff was not entirely credible regarding the severity of her symptoms

The plaintiff's last argument is that the ALJ erred in finding her not credible regarding the extent of her limitations. Tr. 14.  The ALJ's credibility finding gave the plaintiff the "maximum benefit of the doubt" and found that the plaintiff's mental slowness results from her medically determinable impairments.  Tr. 14.   The ALJ did not find the plaintiff not to be credible, therefore.  The remaining deduction drawn from the finding by the ALJ that the plaintiff's mental slowness results from her severe seizure disorder, that the plaintiff is "limited to unskilled work" (Tr. 14) is accordingly left with no clear basis in fact or reasoning.

### H.  The correct application of the five-step sequential evaluation process

Although not raised in the briefs, we note that the ALJ made no residual functional capacity finding.  The ALJ here has found

14

a 56 year old (advanced age)[2] person unable to perform past relevant work to be able to perform substantial gainful activity. The five step process is set forth at 20 C.F.R. § 404.1520.  The use of the Appendix 2 medical vocational guidelines, and their significance, is explained in 20 C.F.R. § 404.1569.  The ALJ inserted a medical-vocational guidelines discussion[3] in the Decision (Tr. 15) but did not make a residual functional capacity finding.  The ALJ questioned the vocational expert hypothetically about medium work positions, but has not either justified or made a finding of a capacity for medium work.  If the plaintiff's residual functional capacity is for the level of exertion (sedentary) (Tr. 61) of her past relevant work, she is disabled.  Rule 201.06[4].  The court should remand the case to the Commissioner with a directive to calculate and pay benefits, in that the plaintiff is unable to perform her past relevant work and no finding is made of a residual functional capacity for other work.

---

[2] 20 C.F.R. § 404.1563(e).

[3] *Id.*

[4] At Tr. 15, the ALJ relates that the vocational expert provided, hypothetically, opinion testimony concerning a hypothetical person with a capacity for medium work.  The ALJ did not make a finding about the claimant's capacity.

**V.   Conclusion**

On the basis of the foregoing, it is recommended that the appeal of the plaintiff be granted and that the case be remanded to the Commissioner to calculate and pay benefits.

                                        ***/s/ J. Andrew Smyser***
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:   February 23, 2006.