IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JUDITH A. TRACEY, :
:
    Plaintiff, :
: **CIVIL ACTION NO. 3:05-1499**
vs. :
: (JUDGE NEALON)
JO ANNE B. BARNHART, : (MAGISTRATE JUDGE SMYSER)
Commissioner of Social Security, :   **FILED**
:   **SCRANTON**
    Defendant :
       APR 0 3 2006

## MEMORANDUM and ORDER

PER _____
    DEPUTY CLERK

This is a Social Security case which comes before the Court on the Plaintiff's appeal from the denial of her claim for disability insurance benefits pursuant to 42 U.S.C. § 405(g) by the Defendant, Commissioner of Social Security. The matter was referred to United States Magistrate Judge J. Andrew Smyser for initial consideration. On February 23, 2006, the Magistrate Judge filed a Report and Recommendation in which he recommended that the Plaintiff's appeal be remanded to the Commissioner for further consideration. (Doc. 10). The Government filed Objections to the Report and Recommendation on March 7, 2006. (Doc. 11). The matter is ripe for disposition and, for the reasons that follow, the Report and Recommendation will be adopted in part and declined in part, and the appeal will be denied.

## I. Standard of Review

Pursuant to the Federal Magistrates Act, when objections to a Report and Recommendation have been filed, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1)(c). This matter will be reviewed de novo as to those portions of the Report and Recommendation to which objections were filed.

## II. Procedural Background

The Plaintiff, Judith A. Tracey, filed an application for Disability Insurance Benefits ("DIB") on November 25, 2003,[1] alleging an inability to work since January 11, 2001, due to a seizure disorder. (R. 11-12). Her request for benefits was denied at the initial level and she filed a request for a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on April 5, 2004, which resulted in a decision, unfavorable to the Plaintiff, being issued on April 28, 2005. (R. 17). The Plaintiff

---

[1] Plaintiff's brief in support of her appeal states that her claim for benefits was filed on December 23, 2003.

2

then requested review by the Appeals Council which, by Notice of Action dated June 10, 2005, declined review of that decision, making the decision of the ALJ the final decision of the Commissioner of Social Security. (R. 3-5). This appeal followed on July 28, 2005. (Doc. 1).

On December 16, 2005, the Plaintiff filed a brief in support of her appeal wherein she argued that the ALJ erred in not only failing to address the treating physician's opinion that she continues to suffer complex partial seizures but also in finding that her seizures were under control. Plaintiff further maintained that the ALJ erroneously failed to consider whether her impairment met or equaled the 12.02 Listings for Organic Mental Disease and that he failed to find that her ongoing disability met or equaled the 11.03 Listings for seizures. She also argued that issues of her credibility and her ability to perform daily tasks were not properly addressed. The Government filed an opposing brief on January 18, 2006. (Doc. 9). The Magistrate Judge issued a Report and Recommendation on February 23, 2006, recommending that the appeal be remanded to the Commissioner. (Doc. 10). Timely objections by the Government, and a response thereto by Plaintiff, followed. (Docs. 11-12).

### III. Disability Determination Process

The Social Security Regulations establish a five-step evaluation process

which is used to determine if a person is entitled to disability benefits. *See* 20 C.F.R. § 404.1520. If at any step in the process the Commissioner finds that a Plaintiff is disabled or not disabled, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920. The steps in the process are as follows: 1) Is the individual engaging in substantial gainful activity? 2) Does the individual have a severe impairment? 3) Does the individual have an impairment which meets or equals the listing of impairments as set forth in 20 C.F.R. part 404, subpart P, *appendix* 1? 4) Does the individual retain the residual functional capacity to engage in his/her past relevant work? and 5) If an individual does not have the capacity to engage in his/her past work, does s/he retain the capacity to perform jobs which exist in significant numbers in the national economy? *See* Social Security Ruling 86-8; 20 C.F.R. §404.1520.

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala,* 993 F.2d 1058, 1064 (3d Cir.1993).

In the present case, the ALJ concluded that Plaintiff had not engaged in

substantial gainful activity since her alleged onset date, and that her seizure disorder, while severe, does not meet or equal a listed impairment. (R. 16). He also found that she was not entirely credible regarding her symptoms or limitations. *Id.* He further determined that Plaintiff is unable to perform her past relevant work and has no transferrable skills but that she has the residual functional capacity ("RFC") to perform work with seizure precautions, no exertional limitations, limited to unskilled work that requires no significant interaction with others. *Id.* Given her age, education and work experience, coupled with her RFC, the ALJ found that there were jobs that Plaintiff could perform which exist in significant numbers in the national economy. *Id.* Consequently, the ALJ concluded that she was not disabled. *Id.*

## IV. Discussion

The role of this court in reviewing a decision by the Commissioner of Social Security to deny disability benefits is to "determine whether there is substantial evidence to support the Commissioner's decision." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004)(*citing Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.1999)). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.... It is less than a preponderance of the evidence but more than a mere scintilla." *Id.* (internal quotations and citations omitted). In an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966)(cited in *Richardson v. Perales, supra*). "Substantial evidence had been . . . defined as 'enough [evidence] to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' *NLRB v. Columbian Enameling & stamping Co.*, 306 U.S. 292, 300 (1939)," *Olsen v. Schweiker*, 703 F.2d 751, 753 (3rd Cir. 1983). Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart, supra,* 364 F.3d at 503.

In the Report and Recommendation, the Magistrate Judge accepted the opinion of the treating physician that her seizure disorder was a sever impairment, but properly rejected the extent to which that opinion addressed the nature and severity of the impairment. The Magistrate Judge also found that the ALJ properly evaluated Plaintiff's impairments and concluded that her impairments did not meet, or medically exceed, the §11.03 Listings. However, the Report and Recommendation observed that the ALJ did not consider Plaintiff's seizure disorder under the §12.02 Listings, relating to organic mental disorders, and that remand was warranted on this issue. Further, determining that the ALJ failed to conduct a proper analysis when he

asked hypothetical questions of the Vocational Expert ("VE") regarding medium work, when no finding for that work capacity was made, the Magistrate Judge suggested a remand for the calculation and payment of benefits based on the ALJ's failure to fully and properly address Plaintiff's RFC.

The Government presents the following grounds as objections to the Report and Recommendation:

1. Because his finding that no severe mental impairment was present was supported by substantial evidence, the ALJ was not required to consider whether Plaintiff's impairment met or equaled the 12.02 Listings

2. The ALJ's RFC findings adequately accommodated Plaintiff's remaining seizures, regardless of whether the seizures were under control.

3. The ALJ's finding that Plaintiff could perform unskilled work was supported by substantial evidence.

4. Contrary to the findings in the Report and Recommendation, the ALJ did make a finding as to Plaintiff's RFC.

5. At most, remand for further consideration, rather than payment of benefits, is warranted.

(Doc. 13).

*I. Whether Plaintiff Has a Listed Impairment under §12.02*

A finding of an existent medical condition alone does not demonstrate a disability. *See Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990). The Listing of

Impairments describe impairments "severe enough to prevent a person from doing any gainful activity" without respect to one's age, education or employment experience. 20 C.F.R. § 404.1525(a). If a person has an impairment or combination of impairments severe enough to meet or medically equate to the specified listed impairment, he is presumed disabled. (R. 17). In Williams v.Sullivan, 970 F.2d 1178 (3rd Cir. 1992), the Court of Appeals for the Third Circuit stated that: "[i]n order to qualify for benefits at step three of the sequential evaluation process, a claimant must match or equal a listed impairment. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. at 1186(emphases in the original, internal citations and quotations omitted). Thus, the question is not only whether the plaintiff has a medical condition, but also whether the condition causes a functional disability that prevents the plaintiff from participating in gainful activities. *Guthrie v. Barnhart.* (M.D. Pa. No. 02-2114)(Kosik, J.).

Plaintiff argued, and the Magistrate Judge agreed, that the failure of the ALJ to consider her impairment under the §12.02 Listings warrants remand. The Government, however, maintains that because there is a specific listing for Plaintiff's condition, §§ 11.02 and 11.03, seizure disorders, the ALJ was not required to also

conduct an analysis under § 12.02, organic brain disorders. It contends that when there is a specific Listing to address an impairment, such as seizure disorder, the ALJ must use that Listing rather than a more-generalized or catch-all Listing, such as organic brain disorders.

Without reaching the issue of whether an ALJ must consider organic brain disorder Listing of §12.02 for a claimant whose impairment is a seizure disorder, which is specifically addressed in §§ 11.02 and 11.03, the omission to do so in the instant matter, if erroneous, would constitute harmless error. While he did not specifically analyze her seizure disorder under this section, the findings made by the ALJ also show that Plaintiff's seizure disorder would fail to meet the criteria for §12.02. To establish a disability under §12.02, she was required to meet subsection A and subsection B, or meet subsection C, in order to have an impairment equal to or exceeding the listing. Subsection B requires two (2) of the four (4) criteria be met, *to wit.*,

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.02. Plaintiff could not meet the requirements of subsection B, which require not merely "mild" restriction but

"marked." Without addressing subsection A, inasmuch as the ALJ found that her seizure disorder results in *"mild restrictions in activities of daily living, mild difficulty with social functioning, mild difficulty with concentration, persistence and pace, and no episodes of decompensation,"* Plaintiff cannot meet any of the four elements of Subsection B. (R. 12)(emphasis added). In arguing that she meets the requirements of subsection B, Plaintiff does not contend that the ALJ failed to find such difficulties but that her difficulties in these areas are "marked," as opposed to "mild," as found by the ALJ. However, she supports this contention by pointin, not to medical evidence in the record, but to her subjective assertions. While there were activities of daily living impaired by her affective condition, there were many such activities she was still capable of performing. Dr. Jonathan Rightmeyer, a state agency psychologist, opined that Plaintiff's limitations as to the first three (3) requirements were "mild." (R. 204). Although he evaluated these elements under Listings §§12.04 and 12.06, they are identical to those of §12.02. Consequently, the ALJ's assessment of the "mild" restriction of daily living was appropriate. Accordingly, Plaintiff failed to satisfy subsection B. Therefore, even assuming she would be able to establish that her condition meets the elements of subsection A, because she could not meet those of subsection B, which are conjunctive with those of subsection A, the Plaintiff must meet the requirements of subsection C for her

seizure disorder to qualify under the § 12.02. Listings, which requires one of the following:

> C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
>> 1. Repeated episodes of decompensation, each of extended duration; or
>>
>> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>>
>> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.02. The ALJ noted that Plaintiff experienced no periods of decompensation, a required finding under parts 1 and 2 of subsection C. To the extent that she maintains her seizure disorder constitutes a residual disease process resulting in such marginal adjustment that minimal change would cause decompensation, she has not identified sufficient medical evidence supporting this assertion. Nor can Plaintiff reasonably argue that the criteria for 12.02 C(3) have been met inasmuch as there is no evidence of an inability to function outside a highly supportive living arrangement. Moreover, the opinions of Dr.

Rightmeyer find that the evidence does not establish the presence of the "C" criterion. (R. 205). As such, Plaintiff's condition fails to satisfy the diagnostic criteria of either Listings §§ 12.04 or 12.06, for which the "B" and "C" criteria are identical to those of § 12.02. (R. 194-207). Consequently, the Plaintiff's condition would fail to meet or medically equal the listed impairments of §12.02. These findings are supported by the medical evidence of record and the conclusions drawn therefrom which have been cited above.

## *II. Plaintiff's RFC*

In *Burnett v. Commissioner of Social Security*, 220 F.3d 112 (3rd Cir. 2000), the Court of Appeals for the Third Circuit stated: "In making a residual functional capacity determination, the ALJ must consider all evidence before him... Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.... In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 121(internal citations and quotations omitted).

It is clear that the ALJ made a determination as to Plaintiff's RFC when he stated, twice, that "[Plaintiff] has the following residual functional capacity: no exertional limitations, requires seizure precautions (no work around height, hazards,

machinery), and is limited to unskilled work that requires no significant interaction with others." (R. 13, 16). Although there was no assessment from a treating, examining or other medical source as to Plaintiff's functional limitations or restrictions, the ALJ made a determination as to her RFC "on the basis of the medical findings, treatment history, and the [Plaintiff's] credible subjective allegations." (R. 14). Accordingly, the court is satisfied that the ALJ did make a proper RFC review and evaluation.[2]

The ALJ additionally found that Plaintiff was capable of performing medium work. Even if Plaintiff's past employment had a sedentary exertional level, a finding that she is capable of performing medium work may be appropriate because past work does not necessarily establish the maximum level she is capable of performing. See Social Security Ruling 96-8p (stating that "RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.") In other words, while her past relevant work may have required lesser exertional demands, the inference cannot be drawn that she was limited to that level of exertional work or that her RFC is so limited. Such a determination was based, in

---

[2] Notably, as stated in the Report and Recommendation, the issue of whether the ALJ made a finding as to RFC was not raised by either the Plaintiff or the Defendant in their briefs on appeal but was raised, for the first time, in the Report and Recommendation. (Doc. 10, p. 14).

part, on Plaintiff's testimony regarding her daily activities including driving and babysitting her grandchildren. Moreover, inasmuch as there is nothing in the record to indicate that she has exertional limitations, and the assessment of her RFC found "no exertional limitations," an ability to perform medium level work is neither precluded by, nor inconsistent with, such findings. Accordingly, there is substantial evidence to support the conclusion of the ALJ that Plaintiff has no exertional limitations and that she is capable of performing medium work.

Finally, while she takes exception with the ALJ's conclusion that she was capable of performing unskilled work, this determination is also supported by substantial evidence in the record. Although Plaintiff was found to be "not entirely credible" with regards to "the intensity, duration and limiting effects" of her impairment, the ALJ gave her "maximum benefit of the doubt [finding] that mental slowness and unwillingness to work with people results from her medically determinable impairment . . . and that she is limited to unskilled work." (R. 14). This conclusion was made despite the ALJ determination that there was "no reason why she cannot perform her past relevant work." *Id.* However, the ALJ noted that there was "no medical basis to warrant greater restrictions than those identified in the residual functional capacity." *Id.* Dr. Rightmeyer, who Defendant observed was the only medical source to review her mental limitations, offered no significant

14

limitations concerning her ability to work. Consequently, given this assessment, coupled with her ability to perform routine daily tasks including, *inter alia*, paying bills, going on trips, raising ducks and seeking employment, based on the testimony and medical evidence there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff was capable of performing unskilled work. Again, the role of the court is not to make factual determinations but is limited to determining whether there is substantial evidence to support the ALJ's decision.

### *III. Other Findings in the Report and Recommendation*

The Report and Recommendation also determined that the ALJ properly considered the opinions of the treating physician and that Plaintiff's impairment did not meet the §11.03 Listings. No objections were raised to these findings and, accordingly, they will be adopted by the court.

## V. Conclusion

Based on the foregoing analysis, the Report and Recommendation will be adopted in part and declined in part and Plaintiff's appeal will be denied. An appropriate Order follows.

Date: April 3, 2006                         s/ William J. Nealon
                                            United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JUDITH A. TRACEY,
  Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,
  Defendant.

**CIVIL ACTION NO. 3:05-1499**

(JUDGE NEALON)
(MAGISTRATE JUDGE SMYSER)

## ORDER

**AND NOW**, this 3rd day of APRIL, 2006, consistent with the accompanying Memorandum of this date, **IT IS HEREBY ORDERED THAT**:

(1) The Magistrate Judge's Report and Recommendation (Doc. 10) is **ADOPTED IN PART AND DECLINED IN PART.**

(2) The Plaintiff's appeal is **DENIED.**

(3) The Clerk of Court is directed to close this case.

s/ William J. Nealon
United States District Judge